**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        swestcot@bursor.com
        apersinger@bursor.com

**THORNTON, DAVIS & FEIN, P.A.**
Barry L. Davis
Aaron P. Davis
80 SW Eighth Street, 29th Floor
Miami, Florida  33130
Telephone: (305) 446-2646
Facsimile: (305) 441-2374
Email:  davis@tdflaw.com
        adavis@tdflaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURY SMITH, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>              v.<br><br>LG ELECTRONICS U.S.A., INC. and SEARS HOLDINGS CORP.,<br><br>                    Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Laury Smith ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants  LG Electronics U.S.A., Inc. and Sears Holding Corp. (collectively, "Defendants").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action against LG Electronics U.S.C., Inc. ("LG") and Sears Holding Corp. ("Sears") related to their design, manufacture, sale, and service of defective top-loading automatic clothes washing machines (collectively the "Defective Washing Machines.").

2.      Defendants misrepresented the functionality of the Defective Washing Machines by labeling and advertising them as "High Efficiency" machines featuring "extra high" spin speeds of 1050-1100 RPMs.[1]  The Defective Washing Machines are built on the same or nearly identical engineering platforms.  Moreover, the Defective Washing Machine models featured a system that purportedly prevents or minimizes vibrations for smooth, quiet operation during use.  As a result of these similarities, the Defective Washing Machines have the same inherent design defects that cause them to shake and vibrate excessively during use due to unbalanced loads that cause internal parts to come loose.

3.      On December 18, 2012, the United States Consumer Product Safety Commission "CPSC" recalled the Defective Washing Machines due to the risk of personal injury and property damage as a result of these design defects.  The recall announcement (Release #13-073; the "Recall") states that "[a]n unbalanced load can cause the washing machine to shake excessively and the drum to come loose during use, posing a risk of injury to consumers and property damage to the surrounding area."[2]

---

[1] Defendants represented that the Kenmore brand Defective Washing Machines had a maximum spin speed of 1050 RPMs, and the LG brand Defective Washing Machines had a maximum spin speed of 1100 RPMs.

[2] Recall announcement available at http://www.cpsc.gov/en/Recalls/2013/LG-Recalls-Top-Loading-Washing-Machines-Due-to-Risk-of-Injury/

4. As a result of the recall, customers were instructed to immediately contact LG or Sears for a free in-home repair. Defendants' in-home repair consisted of the installation of a software "upgrade" on the Defective Washing Machines. However, the software "upgrade" implemented by Defendants was not an upgrade at all. Rather than fix the problems caused by the design defects, the software modification simply capped the spin speed of the Defective Washing Machines at 700 RPMs and otherwise limited the functionality of the Defective Washing Machines, such that the machines were no longer capable of operating at the advertised "extra high" spin speed setting of 1050-1100 RPMs. By reducing the machines' functionality, Defendants stopped the violent shaking and movement caused by the design defects. However, this created a different problem for purchasers because the machines were no longer capable of spinning fast enough to remove excess water from clothing at the end of a wash cycle. Importantly, fast spin speed cycles are a desirable feature as they remove excess water from clothing faster (thereby shortening washing machine time), and leave consumers with dryer clothes (thereby shortening the time that laundry spends in the dryer). The Use & Care Guides and Owner's Manuals for the Defective Washing Machines specifically explain the benefits of the high speed spin cycles advertised by Defendants stating, "Higher spin speeds extract more water from clothes, reducing drying time and saving energy." After the Recall "repair," however, customers were left with soaking wet laundry that required additional spin cycles to be successfully wrung out, thereby negating any "high efficiency" or energy saving promises and representations made by Defendants.

5. It gets worse. In conjunction with the recall, customers were also provided with supplemental information to be inserted into their owner's manuals, and a new caution label to be affixed to the Defective Washing Machines. These supplemental materials feature a new list of washables that the Defective Washing Machines are no longer capable of laundering. These items included any water-proof or water-resistant clothing, mattress covers, outdoor gear, and plastic mats. Thus, the defects described in the Recall and Defendants' "software upgrade" render the Defective Washing Machines unsuitable for the ordinary purpose for which they were advertised,

marketed and sold – i.e., as High Efficiency washing machines. And the machines' defects are incapable of being repaired in a manner that would enable the Defective Washing Machines to perform as advertised.

6.      Plaintiff Laury Smith purchased a Kenmore Elite Model No. 29272 in November 2011 based on Defendants' representations that the product was a "High Efficiency" machine, capable of "extra high" spin speed cycles at 1050 RPMs that would help dry her laundry faster than washing machines that do not have high efficiency capabilities. She paid $579.99 plus sales tax at a Sears store in Hayward, California for her Defective Washing Machine. Since her initial use of the machine, she experienced unbalanced loads that caused the machine to shake violently, make banging noises, rock from side to side, and move or "walk" itself away from the wall which it was positioned against. Ms. Smith requested an in-home repair after learning of Defendants' recall, and her defective machine was serviced in March 2013. However, due to Defendants' "repair," Smith's machine (a) no longer functions as represented in the product advertising, marketing and Use & Care Guide, (b) fails to wring out her clothing, and (c) can no longer be used to launder certain machine-washable items.

7.      Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of the Defective Washing Machines, for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"), the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* ("UCL"), California's False Advertising Law, Bus. & Prof. Code § 17500, *et seq.* ("FAL"), for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and for unjust enrichment. At all relevant times alleged in this matter, Sears and LG acted in concert with, with the knowledge and approval of and/or as the agent of the other within the course and scope of the agency, regarding the acts and omissions alleged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE PARTIES**

8.     Plaintiff Laury Smith is a citizen of California and a consumer as defined in California Civil Code § 1761(d) in that she purchased a Defective Washing Machine "for personal, family or household purposes."

9.     Defendant LG Electronics U.S.A., Inc. is the United States distributor of LG appliances, with its principal place of business located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.   LG Electronics U.S.A., Inc. is a subsidiary of LG Electronics, Inc., a multinational electronics company incorporated in South Korea.   LG manufactures the Kenmore Elite and LG Defective Washing Machines.   LG also participated in creating the branding, packaging and design, logistics and distribution, marketing and advertising of the Defective Washing Machines.   LG has sold, either directly or indirectly, hundreds of thousands of its Defective Washing Machines nationwide and tens of thousands in the State of California.

10.     Defendant Sears Holdings Corp. is a Delaware corporation with its principal place of business located at 3333 Beverly Road, Hoffman Estates, Illinois 60179.   Sears owns the Kenmore brand and participated in creating the branding, packaging and design, logistics and distribution, marketing, advertising and sale of the Defective Washing Machines.   Sears is the parent company of Sears, Roebuck and Co., the nation's fourth largest broadline retailer with approximately 3,900 full-line and specialty retail stores in the United States and Canada, and claims to be "the leading home appliance retailer."   One of Sears' key proprietary brands is the Kenmore line of appliances.   Certain of the Kenmore appliances, including its line of Kenmore Elite washers, are manufactured by LG.   Sears has sold, either directly or indirectly, hundreds of thousands of its Defective Washing Machines nationwide and tens of thousands in the State of California.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of the interest and costs, and Plaintiff is a citizen of a state different from

the states of at least one of the Defendants.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

12.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because the acts and occurrences that are the subject matter of Plaintiff Smith's claims and of many other Class Members occurred in whole or in substantial part in this District, and Defendants extensively sold their goods within the District.

13.    This Court has personal jurisdiction over Defendants because Defendants advertise and sell or have sold the Defective Washing Machines to consumers in California, including Plaintiff's Defective Washing Machine, and because Defendants purposefully avail themselves of distribution chains likely to lead to the sale of the Defective Washing Machines to California residents.

14.    Defendants' extensive business and advertising engagements with California residents constitute purposeful availment of this forum sufficient to subject Defendants to suit in this forum.  Because of Defendants' significant contacts within this forum, assertion of jurisdiction to remedy Defendants' conduct does not offend traditional notions of fair play and substantial justice.

## FACTS COMMON TO ALL CAUSES OF ACTION

### The Defective Washing Machines

15.    The Defective Washing Machines include six models of automatic washing machines manufactured by Defendant LG: LG brand WT5001CW, WT5101HV, and WT5101HW, and Kenmore Elite brand models 29002, 29272, and 29278.  The washing machines are a top-load style manufactured in beige, white and graphite colors.

16.    Defendant LG manufactured, produced, and/or distributed the Defective Washing Machines to several leading retailers including Home Depot, Sears, Kmart, and Best Buy.

17.    Three of the defective models were sold under the Kenmore brand name.  Kenmore is a brand of household appliances established by Sears, and sold exclusively at Sears and Kmart. Kenmore products bear the Kenmore brand label, but are produced by various third-party

manufacturers.  The three Kenmore brand washing machines that are the subject of this complaint (Kenmore Elite brand models 29002, 29272, and 29278) were manufactured by Defendant LG, although labeled, advertised, and sold by Defendants as Kenmore brand appliances.  Defendant Sears participated in creating the branding, packaging and design, logistics and distribution, marketing, advertising and sale of the three Kenmore brand machines.

18.     The Defective Washing Machines, pictured below, were sold from April 2010 to December 2012.  Typical, non-sale retail prices ranged from $899 to $1,099 per unit.  The purchase price for each unit included a substantial price premium compared to non-High Efficiency washing machines due to their purported highly efficient characteristics and functions.



19.     Each of the Defective Washing Machines share a common design defect – unbalanced wash loads cause the internal drum to come loose during use thereby causing the machines to vibrate and shake excessively and make loud banging noises.

20.     The Defective Washing Machines were advertised heavily on Defendants' websites, on Amazon.com, through Home Depot, Best Buy, Sears, Kmart, and through thousands of other in-store and online retailers.

21.     Defendants labeled and advertised the Defective Washing Machines with similar false and misleading statements on their websites, on in-store and other promotional materials, and on the appliances themselves, including that the Defective Washing Machines were:     High Efficiency[3], Energy Star® compliant[4], Highly Energy and Water Efficient, and capable of operating "extra high" spin speed cycles of 1050-1100 RPMs.

22.     The Defective Washing Machines are built on the same or nearly identical engineering platforms.   Moreover, the Defective Washing Machines feature a system that purportedly prevents or minimizes vibration for smooth, quiet operation during use.

23.     The control panel features on the Defective Washing Machines and their user manuals specifically also list the available spin speeds: "Extra High," "High," "Medium," "Low," and "No Spin."  The manuals also state that "Higher spin speeds extract more water from clothes, reducing drying time and saving energy."

**The Inherent Design Defects**

24.     The Defective Washing Machines have the same inherent design defects that cause: (a) unbalanced loads that cause internal parts to come loose; (b) excessive shaking and vibrating during use, which can cause both personal injury and property damage; (c) loud banging noises

---

[3] High Efficiency washing machines are recognizable by a blue "HE" logo.  To carry the "HE" label, appliances must meet strict industry guidelines and use less water, less energy and less detergent. "HE" washers can be either front-loading or top-loading depending on their design, but if they show the "HE" symbol, they have met stringent low energy guidelines. High efficiency washers, which are also Energy Star® compliant, use from 20% to 66% of the water used by traditional agitator washers.  A high efficiency top-loader, such as the Defective Washing Machines, has a shorter agitator that draws the load down into the low water and detergent to effect a cleaning.  *See* American Cleaning Institute, High Efficiency Washers and Detergents: Working in Harmony to Save Energy and Water, available at http://www.cleaninginstitute.org/assets/1/Page/HE.pdf.   The message and promise conveyed by the "HE" logo is that the appliance complies with and functions as a High Efficiency unit within the meaning of the established industry guidelines.  As such, an "HE" labeled appliance enables purchasers to maximize their water, energy, monetary and time savings during the use of their product.

[4] Energy Star® qualified clothes washers use 40 to 50 percent less energy and about 55 percent less water than standard washers. As a result, a consumer can expect to save up to $50 per year on utility and water bills, with additional savings from using less detergent. Most Energy Star® qualified washers extract more water during the spin cycle, providing further energy savings when using a clothes dryer because drying time will be shorter. Also, owners will see less wear and tear on clothes from front loading models, which do not need an agitator. *See* http://www.energystar.gov/ia/new_homes/features/Appliances_062906.pdf

during use; and (d) unsuitability for the residential use for which the Defective Washing Machines were sold.

**The Defective Washing Machines Are Recalled**

25. The Defective Washing Machines' defective design was confirmed by the CPSC. On December 18, 2012, the CPSC recalled the Defective Washing Machines due to risk of injury. The recall announcement (Release #13-073; the "Recall") states that "[a]n unbalanced load can cause the washing machine to shake excessively and the drum to come loose during use, posing a risk of injury to consumers and property damage to the surrounding area." [5] As of the recall date, Defendants had received at least 343 reports of the Defective Washing Machines vibrating excessively, at least 187 reports of property damage, and one report of injury. According to the CPSC Recall announcement, Defendants sold approximately 457,000 units of the Defective Washing Machines.

**Defendants' Inadequate "Fix"**

26. The Recall instructs consumers to immediately contact LG or Sears for a free in-home repair of the machine. Defendants' in-home repair consisted of the installation of a software "upgrade" on the Defective Washing Machines. However, rather than fix the problems caused by the design defects, the software modification simply limits the functionality, efficiency, and speed of the Defective Washing Machines to avoid the excessive vibrations reported in CPSC's Recall announcement.

27. After the software "upgrade," the Defective Washing Machines can no longer operate at the advertised "extra high" spin speed of 1050-1100 RPMs. Defendants capped the spin speed of the Defective Washing Machines to 700 RPM to avoid the instability and danger caused by their defective design, rather than fixing the defect itself. This "upgrade" rendered the Defective Washing Machines ***useless*** for their advertised purpose. The machines were no longer capable of spinning fast enough to remove excess water from clothing at the end of a wash cycle.

---

[5] Recall announcement available at http://www.cpsc.gov/en/Recalls/2013/LG-Recalls-Top-Loading-Washing-Machines-Due-to-Risk-of-Injury/

Customers were left with soaking wet laundry that required additional spin cycles to be successfully wrung out, thereby negating any "high efficiency" or energy saving promises or representations made by Defendants.

28.    In the Use & Care Guide for the Defective Washing Machines, Defendants also represent that the Defective Washing Machines are "designed and manufactured for years of dependable operation" and that by "follow[ing] the operating and care instructions in this manual" "your washer will provide *many years of reliable service.*"

29.    In conjunction with each sale, Defendants warranted that the Defective Washing Machines were fit for the ordinary residential use for which such goods are used and were free from defects.

30.    Defendants are aware of and have publicly acknowledged the defects in their Defective Washing Machines.  The product defects, per the CPSC's Recall, result in unbalanced loads causing the drum inside the Defective Washing Machines to come loose and for the units to shake excessively while in use.  This results in a loss of effectiveness concerning the machines' function.

31.    The defects described in the Recall and Defendants' software "upgrade" render the Defective Washing Machines unsuitable for the ordinary purpose for which they were advertised, marketed, and sold – i.e, as High Efficiency washing machines.  The software "upgrade" renders the Defective Washing Machines incapable of operating at the advertised 1050-1100 RPM "extra high" spin speed cycle.  After software "upgrade" installations, additional spin cycles are needed to prevent clothes from coming out of the washer sopping wet.  This fact neutralizes the benefits of the advertised "HE" and/or Energy Star® designations on each of the Defective Washing Machines. Moreover, Defendants knew about the defects with the Defective Washing Machines since 2010 from a litany of consumer complaints.  Following the Recall upgrade, consumers continued to complain through online forums regarding the Defective Washing Machines' failure to function as advertised by Defendants.  The following is just a small sample of recent consumer reactions regarding the Defective Washing Machines:

Posted by Powrbruh on February 28, 2013

*"I had the LG topload washer recall done a few weeks ago and now my washer does not spin at 1100rpms. When I select the Extra High spin speed it spins a little faster than a gentle spin speed. Clothes are very heavy with water due to slow spin speed. Unacceptable especially after spinning for 20 minutes"*

*"It takes over an hour to dry one load of clothes. Twice as long as it did before I had this recall work done. And to be told by LG that slowing the spin speed that is meant for delicates due to the machines not being able to withstand high spin speeds is definitely not going to fly with me. The engineers should have designed the machines better"*

*"[The LG repair technician] performed some test and found out my washer final spin is only 700rpms. He called LG and was told that 700rpms was normal for the new software. He stated to me that I would have to take up my issues with LG because there was nothing else he could do."*

Posted by SpringfieldMH on March 20, 2013

*"We've experienced this problem with the recall "repair" on our LG WT5001CW washer. The "repair" is a firmware (software) reload, nothing physical, which appears to primarily slow the washer down to avoid the vibration problem...."*

Posted by kpholmes on March 2, 2013

*"Received a letter from Sears [t]hat [my] washing machine made by LG [was] recalled. Sears sent [a] technician to fix [the] problem. [The] [u]pgrade [is] done, [but] now the washer times have been extended, 102 min. to do towels, 110 for heavy duty, 300 min for sanitize, unable to use all the features as the wash times are extended. Washer is no longer efficient. I never would have bought this product if I knew it would have these long cycle times..."*

32.     In conjunction with the Recall, customers were also provided with supplemental information to be inserted into their owner's manuals, and a new caution label to be affixed to the Defective Washing Machines.  These supplemental materials feature a new list of washables that the Defective Washing Machines are no longer capable of laundering.  These items included any water-proof or water-resistant clothing, mattress covers, outdoor gear and plastic mats.  After a Recall "upgrade," the following warning label is placed on the machine to reflect this change in functionality:

1
2
3
4
5
6
7
8
9
10
11



12

33.    The machines' defects are incapable of being repaired in a manner that would enable the Defective Washing Machines to perform as advertised.  Defendants were aware of the CPSC Recall and that none of the proposed solutions they offered Plaintiff Smith and Class Members would adequately remedy the defects.

34.    As a result of Defendants' deceptive conduct and material concealments and misrepresentations, as well as Defendants' other misconduct described in the Complaint, Plaintiff and the Class bought hundreds of thousands of the Defective Washing Machines and have suffered – and continue to suffer – injury.

35.    As described above, Defendants are aware of the Recall and defect problems at issue in this case, and have been for some time. Plaintiff and many members of the Class have alerted Defendants to the Recall and defect problems by complaining to Defendants directly and/or to Defendants' authorized dealerships and service persons. Indeed, many members of the Class have posted their experiences with the Defective Washing Machines on the Internet, including, but not limited to the following online forums:

- http://www.consumeraffairs.com/homeowners/lg_washing_machine.html
- http://ths.gardenweb.com/forums/load/laundry/msg0212041523004.html

- https://www.change.org/petitions/lg-electronics-replace-or-completely-fix-a-recalled-washer

- http://www.consumerreports.org/cro/news/2012/12/lg-recalls-washing-machines-after-reports-of-property-damage/index.htm

- http://www.pissedconsumer.com/reviews-by-company/sears/recalled-kenmore-elite-washer-made-by-lg-20130302389454.html

- http://appliancejunk.com/forums/index.php?topic=11181.0

36.     Upon information and belief, Defendants acknowledge internally that the defects in the Defective Washing Machines could not be effectively repaired.  Rather, Defendants have instructed their repair technicians to re-program each Defective Washing Machine with an "upgrade" that actually slows down the Defective Washing Machines.

37.     Defendants failed to adequately design and/or test the Defective Washing Machines to ensure that they were and are free from material defects.  Before these models even reached the market, Defendants knew, or were reckless in not knowing, that the Defective Washing Machines (a) contained inherent defects; and (b) were not of merchantable quality or fit for their ordinary purpose. To this day, Defendants continue to conceal this information from consumers and purchasers of the Defective Washing Machines.

38.     Defendants have also universally failed to adequately implement an effective remedy for Recall defects in the Defective Washing Machines to ensure that they were and are free from material defects.  Due to the unsuccessful implementation of Defendants' "upgrade," the Defective Washing Machines do not function as advertised.  Plaintiff and Class Members who have had their Defective Washing Machines "upgraded" have actually been deceptively downgraded to a machine that does not function as advertised.

39.     The defects described in the Recall and Defendants' software "upgrade" render the Defective Washing Machines unsuitable for the ordinary purpose for which they were advertised, marketed, and sold – i.e., as High Efficiency washing machines.

**Plaintiff's Experience**

40.     On November 25, 2011, Plaintiff Smith purchased a Kenmore Elite High Efficiency Washer, Model No. 29272 from a Sears store in Hayward, California during a so-called "Black Friday" sale.  Ms. Smith paid $579.99 plus sales tax for her unit, which was on sale at the time of purchase.  Despite the reduced sale price, Ms. Smith's purchase price included a substantial price premium compared to non-High Efficiency washing machines due to its purported highly efficient characteristics and functions.  The machine was delivered to her home in Manteca, California on or about January 13, 2012.

41.     While shopping for a new washing machine, Plaintiff looked only at High Efficiency models because she valued their water efficiency, energy efficiency, money-saving and time-saving features.  She would not have purchased a Kenmore Elite High Efficiency Washer, Model No. 29272 had she known that it was not an effective washing machine, but was rather defective and thus could not perform as a High Efficiency washing machine as advertised.  Indeed, had Plaintiff known the truth about the Defective Washing Machines, she would have bought a different High Efficiency washing machine at that time.

42.     Prior to purchasing the Defective Washing Machine at Sears, Plaintiff examined an in-store floor model and reviewed Defendants' representations about the unit on a placard which sat atop the floor model.  Among other things, Defendants made the following misrepresentations on both the floor model and the placard, which Plaintiff Smith read and relied on prior to her purchase:  (a) that the unit was a "High Efficiency" washer and "HE" compliant; (b) that the unit was Energy Star® compliant and thus water and energy efficient; (c) that the unit helped dry clothes faster with its "Extra High" spin speed cycle at 1050 RPMs for the duration of the default time for that cycle.  Ms. Smith also discussed the machine's features and benefits with a Sears store employee who emphasized these misrepresentations.

43.     Plaintiff Smith's Defective Washing Machine fits the description of the Defective Washing Machines subject to the CPSC's December 18, 2012 recall announcement.  She experienced the problems typically associated with these machines from the very beginning.  Loads

of laundry would become unbalanced, and would cause the machine to shake excessively and make a banging noise during use.  Smith attempted to correct the problem by carefully loading the machine to evenly distribute the washables.  But the even distribution of laundry did not alleviate the excessive shaking or banging noise.

44.     The violent movement of Smith's defective machine was so severe that the machine would actually shift or "walk itself" away from the wall on which it was positioned.  To keep the defective machine from damaging the dryer positioned next to it, Plaintiff Smith used a plastic trash can as a buffer to help absorb to shock of the shaking machine and attempt to keep it in place.

45.     Smith became aware of the Recall, and promptly scheduled an in-home repair pursuant to Defendants' instructions.  Her defective machine was serviced at her home in Manteca, California in March 2013.  Due to the Recall repair, however, Smith's Defective Washing Machine (a) can no longer be used to clean certain of her machine-washable items; (b) fails to wring out her clothing; and (c) no longer functions as represented in the product advertising, marketing and owner's manual.  Now, Plaintiff Smith's washed loads of laundry take twice as long to dry, and she uses a laundromat to wash certain items that used to be washable in her Defective Washing Machine.

46.     Plaintiff Smith, and each other purchaser of these appliances, paid a tangible increased cost for the Defective Washing Machine because of Defendants' false representations about its functionality, efficiency, dependability, and fitness for residential use.  Moreover, Plaintiff Smith and the other Class Members paid more money in additional energy costs to operate the Defective Washing Machine and her clothes dryer than each would have paid if the washing machine had actually performed as promised.  Plaintiff Smith would not have purchased the Defective Washing Machine if she had known that the representations were false.  Ultimately, Smith's Defective Washing Machine was worthless (and certainly worth less than its representations suggested).

**Harm Suffered By Plaintiff And The Class**

47.     Because Defendants misrepresented the attributes of the Defective Washing Machines, Defendants were able to charge higher prices for these washers in comparison with products that do not purport to offer the supposed speed, durability, or efficiency of the Defective Washing Machines.  Plaintiff and Class Members were misled into paying high prices because they believed that Defendants' products were High Efficiency washing machines that functioned as advertised and were not defective.

48.     In other words, Plaintiff and the Class Members did not get the benefit of their bargains.  Plaintiffs and Class Members were misled into purchasing Defective Washing Machines that did not meet their expectations.

49.     Therefore, Plaintiff and Class Members suffered actual damages as a result of Defendants' actions.  Plaintiffs and other Class Members seek either full refund of the purchase prices paid for the Defective Washing Machines or recovery of the difference between the prices paid for the Defective Washing Machines and the prices that the Defective Washing Machines would have commanded in the marketplace if they had been marketed truthfully.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased a Defective Washing Machines (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

51.     Plaintiff also seeks to represent a subclass of all Class Members who have purchased the Defective Washing Machines in California (the "California Subclass").

52.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  Defendants sold approximately 457,000 units of the Defective Washing Machines between 2010 and 2012.  The precise number of Class and Subclass Members and their identities are unknown to Plaintiff Smith at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

53.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to:

(a) Whether Defendants violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*;

(b) Whether Defendants breached an express warranty made to Plaintiff and the Class;

(c) Whether Defendants breached an implied warranty made to Plaintiff and the Class;

(d) Whether Defendants were unjustly enriched by their conduct;

(e) Whether the Defective Washing Machines share a common defect as described herein;

(f) Whether Defendants advertised or marketed the Defective Washing Machines in a way that was false or misleading;

(g) Whether Defendants' conduct was false, misleading or reasonably likely to deceive ordinary consumers;

(h) Whether the Defective Washing Machines fail to conform to the representations, which were published, disseminated and advertised to Plaintiff and the Class;

(i) Whether Class Members have been injured by Defendants' conduct;

(j) Whether Class Members suffered an ascertainable loss as a result of the  Defendants' misrepresentations; and

(k) Whether Class Members are entitled to damages, restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

54.     Plaintiff Smith, and members of the California Subclass have questions of fact and common law to them that predominate over any questions affecting only individual members of the California Subclass.  These common questions include:

(a) Whether Defendants violated California Civil Code § 1750, *et. seq;*

(b) Whether Defendants violated California Business & Professions Code § 17200, *et seq;*

(c) Whether Defendants violated the Song-Beverly Consumer Warranty Act;

(d) Whether Defendants violated California Business & Professions Code § 17500, and

(e) The appropriate measure of damages to be received by Plaintiff and the California Subclass.

55.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased a Defective Washing Machine in reliance on the misrepresentations and warranties described above, and suffered a loss as a result of that purchase.

56.     Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

57.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)

58.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff brings this Count I individually and on behalf of the members of the Class against all Defendants.

60.     The Defective Washing Machines, Kenmore Elite brand washing machine models 29002, 29272, and 29278 and LG brand washing machine models WT5001CW, WT5101HV, and WT5101HW, are consumer products as defined in 15 U.S.C. § 2301(1).

61.     Plaintiff and the Class Members are consumers as defined in 15 U.S.C. § 2301(3).

62.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

63.     In connection with the sale of the Defective Washing Machines, Defendants issued written warranties in 15 U.S.C. § 2301(6), by making express warranties that the Defective Washing Machines:  (a) were "High Efficiency" washers and "HE" compliant; (b) were Energy Star® compliant and thus water and energy efficient within the meaning of that program; (c) helped dry clothes faster using its "Extra High" spin speed cycle at 1050-1100 RPMs for the duration of the default time for that cycle; (d) were safe for residential use and fit for everyday laundering needs; (e) "will provide many years of reliable service"; and (f) "[are] designed and manufactured for years of dependable service" (collectively, the "Express Warranties" or "Misrepresentations").

64.     In fact, the Defective Washing Machines do not conform to the Express Warranties because each of the Express Warranties is false and misleading.  The Defective Washing Machines do not, in fact, provide years of dependable and reliable service because their drums come loose during normal use, causing property damage and physical injury, and because they require extra spin cycles to wring out wash loads after receiving a purported Recall "repair."  The Defective Washing Machines are not capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs, and are not Energy Star® or "HE" compliant because inherent defects and Recall "upgrades" have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency.  The Defective Washing Machines are also not safe for residential use and everyday laundering needs, as they have been subject to a recall due to an instability defect and are

unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor gear, or plastic mats.

65.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., thereby damaging Plaintiff and the Class and Subclass Members.

66.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Defective Washing Machines if they knew the truth about them, and would not have paid a premium price for a defective washer.

67.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranties, which damages either constitute the full purchase price of the Defective Washing Machines or the difference in value between the Defective Washing Machines as warranted and the Defective Washing Machines as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class for and in connection with the commencement and prosecution of this action.

**COUNT II**
**(Breach Of Express Warranty)**

68.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

69.     Plaintiff brings this Count II individually and on behalf of the members of the Class against all Defendants.

70.     In connection with the sale of the Defective Washing Machines, Defendants issued written Express Warranties.  Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that the Defective Washing Machines were fit for their intended purpose as High Efficiency washing machines by making the Express Warranties to Plaintiff and the Class.

71.     Defendants' Express Warranties, their affirmations of fact and promises made to Plaintiff and the Class regarding the Defective Washing Machines, and their descriptions of the Defective Washing Machines contained in or on Defendants' washing machines, advertisements, in-store sales materials, Owner's Manual, Use & Care Guide, product packaging, and labeling became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating express warranties that the Defective Washing Machines would conform to those affirmations of fact, representations, promises, and descriptions.

72.     The Defective Washing Machines do not, in fact, provide years of dependable and reliable service because the drums inside them may come loose during normal use, causing property damage and physical injury, and because they require extra spin cycles to wring out wash loads after receiving a purported Recall "repair." The Defective Washing Machines are not capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs, and are not Energy Star® and/or "HE" compliant because of inherent defects and Recall "upgrades" that have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency. The Defective Washing Machines are also not safe for residential use and everyday laundering needs, as they have been subject to a recall due to an instability defect and are unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor gear, or plastic mats. Defendants breached their Express Warranties because the Defective Washing Machines do not perform as expressly warranted.

73.     Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Defective Washing Machines if the true facts concerning their functionality, safety, and dependability had been known; (b) they paid a price premium for the Defective Washing Machines based on Defendants' representations regarding the  machines' functions and efficiencies; (c) the Defective Washing Machines did not have the characteristics, uses, or benefits as promised; and (d) Plaintiff and the Class Members have paid and will continue to pay laundromat costs and higher energy costs for as long as they continue to use the Defective Washing Machines. As a result, Plaintiffs and the Class have been

damaged either in the full amount of purchase prices of the Defective Washing Machines or in the difference in value between the Defective Washing Machines as warranted and the Defective Washing Machines as actually sold.

### COUNT III
### (Breach Of The Implied Warranty Of Merchantability)

74.  Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

75.  Plaintiff brings this Count III individually and on behalf of the members of the Class against all Defendants.

76.  Defendants are "merchants" as to the Defective Washing Machines within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed and marketed the Defective Washing Machines, which are "goods" within the meaning of the UCC. Consequently, Defendants impliedly warranted that the Defective Washing Machines were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on their containers or labels. However, each of these implied warranties was false.

77.  In reliance on Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class Members purchased the Defective Washing Machines for use as residential washing machines.

78.  The Defective Washing Machines were not altered by Plaintiff and Class Members.

79.  The Defective Washing Machines were defective when they left the exclusive control of Defendants.

80.  Defendants knew the Defective Washing Machines would be purchased and used without additional testing for efficacy by Plaintiff and Class Members.

81.  The Defective Washing Machines were defectively designed and unfit for their intended purpose, and Plaintiff and Class Members did not receive the goods as warranted.

82.     More specifically, Defendants breached their implied warranty of merchantability to Plaintiffs because the Defective Washing Machines would not pass without objection in the trade because they were incapable of performing the functions they were intended to perform.  They do not provide years of dependable and reliable service because the drums inside them may come loose, causing property damage and physical injury, and because they require extra spin cycles to wring out wash loads.  The Defective Washing Machines are not capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs, and are not Energy Star® and/or "HE" compliant because of inherent defects and Recall "upgrades" that have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency.  The Defective Washing Machines are also not safe for residential use and everyday laundering needs, as they have been subject to a recall due to an instability defect and are unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor gear, or plastic mats.

83.     Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Defective Washing Machines if the true facts concerning their functionality, safety, and dependability had been known; (b) they paid a price premium for the Defective Washing Machines based on Defendants' representations regarding the  machines' functionalities and efficiencies; and (c) the Defective Washing Machines did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs and the Class have been damaged either in the full amount of purchase prices of the Defective Washing Machines or in the difference in value between the Defective Washing Machines as warranted and the Defective Washing Machines as actually sold.

## COUNT IV
### (Breach Of Implied Warranty Of Fitness For A Particular Purpose)

84.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff bring this Count IV individually and on behalf of the members of the Class against all Defendants.

86.     Defendants marked, distributed, and/or sold the Defective Washing Machines with implied warranties that they were fit for their intended purpose in that the washing machines were capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs and were Energy Star® and/or "HE" compliant.  However, inherent defects and Recall "upgrades" have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency.  At the time the Defective Washing Machines were sold, Defendants knew or should have known that Plaintiff and Class Members were relying on Defendants' skill and judgment to select or furnish a product that was suitable for sale.

87.     In reliance on Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class Members purchased the Defective Washing Machines for use as residential "HE" compliant washing machines capable of operating at spin speeds of 1050-1100 RPMs.

88.     The Defective Washing Machines were not altered by Plaintiff and Class Members.

89.     Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Defective Washing Machines if the true facts concerning their functionality, safety, and dependability had been known; (b) they paid a price premium for the Defective Washing Machines based on Defendants' representations regarding the  machines' functionalities and efficiencies; and (c) the Defective Washing Machines did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs and the Class have been damaged either in the full amount of purchase prices of the Defective Washing Machines or in the difference in value between the Defective Washing Machines as warranted and the Defective Washing Machines as actually sold.

## COUNT V
### (Unjust Enrichment)

90.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

91.     Plaintiff brings this Count V individually and on behalf of the members of the Class against all Defendants.

92.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Defective Washing Machines.

93.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Defective Washing Machines.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the Defective Washing Machines were dependable and safe for residential use when in fact they were not, which caused injuries to Plaintiff and Class Members because they would not have purchased the Defective Washing Machines if the true facts had been known.

94.     Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the Defective Washing Machines were capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs and were Energy Star® and/or "HE" compliant when in fact they were not, which caused injuries to Plaintiff and Class Members because they would not have purchased the Defective Washing Machines if the true facts had been known.

95.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

### COUNT VI
**(Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**Civil Code § 1750, *et seq.*)**

96.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

97.     Plaintiff brings this Count VI individually and on behalf of the members of the California Subclass against all Defendants.

98.     In connection with the sale of the Defective Washing Machines, Defendants represented that the Defective Washing Machines: (i) "will provide many years of reliable service"; (ii) "[are] designed and manufactured for years of dependable service"; (iii) were capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs; (iv) were Energy

Star® and/or "HE" compliant; and (v) were safe for residential use and fit for everyday laundering needs.

99.     The Defective Washing Machines do not, in fact, provide years of dependable and reliable service because the drums inside them may come loose, causing property damage and physical injury, and because they require extra spin cycles to wring out wash loads.  The Defective Washing Machines are not capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs and are not Energy Star® and/or "HE" compliant because inherent defects and Recall "upgrades" have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency. The Defective Washing Machines are also not safe for residential use and everyday laundering needs, as they have been subject to a recall due to an instability defect and are unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor gear, or plastic mats.

100.    In violation of Civil Code section 1750, *et. seq.* (the "CLRA"), Defendants have engaged in unfair and deceptive acts and practices in the course of transactions with Plaintiff Smith and the California  Subclass, and such transactions were intended to and did result in the sales of goods or services to Plaintiff Smith and the California Subclass.  Plaintiff Smith and the California Subclass are "consumers" as that term is used in the CLRA because they sought or acquired Defendants' goods or services for personal, family, or household purposes.  Defendants' past acts and practices include, but are not limited to:

    a.  Defendants' misrepresentations that the Defective Washing Machines had characteristics, ingredients, uses, benefits, or quantities which they do not have, in violation of Civil Code § 1770(a)(5);

    b.  Defendants' misrepresentations that the Defective Washing Machines were of a particular standard, quality, and grade when they were of another, in violation of Civil Code § 1770(a)(7); and

    c.  Defendants advertising of goods with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9).

101.   Defendants' violations of Civil Code § 1770 have proximately caused damage to Plaintiff Smith and the other California Subclass Members in the amounts of the full purchase price of the Defective Washing Machines or, alternatively in the difference in value between the Defective Washing Machines as represented and the Defective Washing Machines as actually sold. Plaintiff Smith and the California Subclass request injunctive relief enjoining Defendants from engaging in further deceptive acts and practices in relation to the advertising, promotion and sale of the Defective Washing Machines as well as ordering that Defendants conduct corrective advertising.

102.   Prior to the filing of this Complaint, notice letters were served on Defendants that complied in all respects with California Civil Code § 1782(a).  Plaintiff Smith, by and through her counsel, sent Defendants letters via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and that they must correct, replace, or otherwise rectify the services alleged to be in violation of § 1770.  A true and correct copy of Plaintiff's letter is attached hereto as Exhibit A.

103.   Defendants failed to respond adequately to Plaintiff Smith's above-described notices within thirty (30) days of receipt, pursuant to California Civil Code § 1782(b).  Therefore, on behalf of the California Subclass, pursuant to California Civil Code § 1780, Plaintiff Smith additionally asserts claims for actual damages, as set forth above, or return of money paid for the Defective Washing Machines, plus any other relief that the court deems proper, plus reasonable attorneys' fees and court costs.

**COUNT VII**
**(Violation Of The Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.*)**

104.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

105.   Plaintiff brings this Count VII individually and on behalf of the members of the California Subclass against all Defendants.

106.     Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*  The UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…."

107.     In connection with the sale of the Defective Washing Machines, Defendants warranted that the Defective Washing Machines: (i) "will provide many years of reliable service"; (ii) "[are] designed and manufactured for years of dependable service"; (iii) were capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs; (iv) were Energy Star® and/or "HE" compliant; and (v) were safe for residential use and fit for everyday laundering needs.

108.     The Defective Washing Machines do not, in fact, provide years of dependable and reliable service because the drums inside them may come loose, causing property damage and physical injury, and because they require extra spin cycles to wring out wash loads.  The Defective Washing Machines are not capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs and are not Energy Star® and/or "HE" compliant because inherent defects and Recall "upgrades" have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency.  The Defective Washing Machines are also not safe for residential use and everyday laundering needs, as they have been subject to a recall due to an instability defect and are unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor gear, or plastic mats.

109.     Defendants' misrepresentations and other conduct violated the "unlawful" prong of the UCL in part because they violate California Business and Professions Code § 17500, *et seq.* (California's False Advertising Law) and California Business and Professions Code § 1750 (California's Consumers Legal Remedies Act) as described herein.

110.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends

public policy, is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

111.    Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about the Defective Washing Machines, as described herein.

112.    Plaintiff and members of the California Subclass were injured as a direct and proximate result of Defendants' UCL violation because: (a) they would not have purchased the Defective Washing Machines if the true facts concerning their functionality, safety, and dependability had been known; (b) they paid a price premium for the Defective Washing Machines based on Defendants' representations regarding the  machines' functionalities and efficiencies; and (c) the Defective Washing Machines did not have the characteristics, uses, or benefits as promised. As a result, Plaintiffs and the California Subclass have been damaged either in the full amount of purchase prices of the Defective Washing Machines or in the difference in value between the Defective Washing Machines as advertised and the Defective Washing Machines as actually sold.

### COUNT VIII
**(Violation Of California's False Advertising Law,
Cal. Bus. & Prof. Code §§ 17500, *et seq.***

113.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

114.    Plaintiff brings this Count VIII individually and on behalf of the members of the California Subclass against all Defendants.

115.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

116.    Defendants committed acts of false advertising, as defined by § 17500, by misrepresenting the true facts concerning the functionality, safety and efficiency of the Defective Washing Machines, as described herein.

117.    Defendants knew or should have known, through the exercise of reasonable care that their representations about the Defective Washing Machines were untrue and misleading.

118.    Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

119.    Plaintiff and members of the California Subclass lost money or property as a direct and proximate result of Defendants' FAL violation because:  (a) they would not have purchased the Defective Washing Machines if the true facts concerning their functionality, safety, and dependability had been known; (b) they paid a price premium for the Defective Washing Machines based on Defendants' representations regarding the  machines' functionalities and efficiencies; and (c) the Defective Washing Machines did not have the characteristics, uses, or benefits as promised. As a result, Plaintiffs and the California Subclass have been damaged either in the full amount of purchase prices of the Defective Washing Machines or in the difference in value between the Defective Washing Machines as advertised and the Defective Washing Machines as actually sold.

## COUNT IX
### (Violation Of The Song-Bervely Consumer Warranty Act, Civil Code § 1790 *et seq.*)

120.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

121.    Plaintiff brings this Count IX individually and on behalf of the members of the California Subclass against all Defendants.

122.    Plaintiff Smith and the members of the California Subclass are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

123.    Defendants' Defective Washing Machines are "consumer goods" within the meaning of Section 1791(a) of the California Civil Code.

124.    Defendants are "manufacturers" of the Defective Washing Machines pursuant to Section 1791(j) of the California Civil Code.

125.    In connection with the sale of the Defective Washing Machines, Defendants warranted that the Defective Washing Machines: (i) "will provide many years of reliable service"; (ii) "[are] designed and manufactured for years of dependable service"; (iii) were capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs; (iv) were Energy Star® and/or "HE" compliant; and (v) were safe for residential use and fit for everyday laundering needs.

126.    The Defective Washing Machines do not, in fact, provide years of dependable and reliable service because the drums inside them may come loose, causing property damage and physical injury, and because they require extra spin cycles to wring out wash loads. The Defective Washing Machines are not capable of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs, and are not Energy Star and/or "HE" compliant because inherent defects and Recall "upgrades" have resulted in reduced functionality so as to require numerous wash cycles and reduced efficiency.  The Defective Washing Machines are also not safe for residential use and everyday laundering needs, as they have been subject to a recall due to an instability defect and are unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor gear, or plastic mats.

127.    As set forth above, Defendants breached both express and implied warranties given to Plaintiff Smith and the California Subclass. Such breaches proximately caused damages to Plaintiff Smith and the California Subclass in the full amount of purchase prices of the Defective Washing Machines or in the difference in value between the Defective Washing Machines as warranted and the Defective Washing Machines as actually sold.  In addition, pursuant to California Civil Code § 1794(d), Plaintiff Smith and the California Subclass are entitled to recover a sum equal to the aggregate amount of their costs and expenses, including attorneys' fees based on actual time expended, determined by the Court to be reasonably incurred by them in connection with their commencement of this action.

## REQUEST FOR RELIEF

114.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.   For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass Members;

b.   For an order declaring that the Defendants' conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the court may deem proper; and

h.   For an order awarding Plaintiff, the Class, and the California Subclass their reasonable attorneys' fees and expenses and costs of the suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all claims and causes of action in this lawsuit.

Dated: September 19, 2013

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            swestcot@bursor.com
            apersinger@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

**THORNTON, DAVIS & FEIN, P.A.**
Barry L. Davis
Aaron P. Davis
80 SW Eighth Street, 29th Floor
Miami, Florida  33130
Telephone: (305) 446-2646
Facsimile: (305) 441-2374
Email:  davis@tdflaw.com
adavis@tdflaw.com

1    I, Laury Smith, declare as follows:

2    1.    I am a plaintiff in this action and a citizen of the State of California. I have personal

3    knowledge of the facts herein and, if called as a witness, I could and would testify competently

4    thereto.

5    2.    The Complaint filed in this action is filed in the proper place for trial under Civil

6    Code Section 1780(d) in that Defendants LG Electronic U.S.A., Inc. and Sears Holdings Corp. do

7    business in Alameda County. I purchased a Kenmore Elite High Efficiency Washer, Model No.

8    29272 at a Sears store in Hayward, California in November 2011. This washing machine was

9    labeled as a "High Efficiency," Energy Star® compliant, top-loading residential washing machine

10   capable of "Extra High" spin speeds. These representations were a substantial factor influencing

11   my decision to purchase this machine. I would not have purchased the washing machine if I had

12   known that it was not an effective washing machine, but was rather defective and did not have the

13   characteristics, functions or efficiencies as advertised. If I had not been exposed to these false

14   representations I would not have purchased this washing machine.

15   I declare under the penalty of perjury under the laws of the State of California that the

16   foregoing is true and correct, executed on September 18, 2013 at Manteca, California.

17

18

19                                          Laury Smith

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
**www.bursor.com**

**SCOTT A. BURSOR**
Tel: **646.837.7150**
Fax: **212.989.9163**
**scott@bursor.com**

August 5, 2013

_**Via Certified Mail – Return Receipt Requested**_

LG Electronics USA, Inc.
Legal Department
1000 Sylvan Avenue
Englewood Cliffs, NJ 07632

Sears Holdings Corporation
Legal Department
3333 Beverly Road
Hoffman Estates, IL 60179

Re:      _Violation of Magnuson-Moss Act, 15 U.S.C. § 2301, et seq.; Violation of California Civil Code § 1782; Notice Letter Pursuant to Cal. Com. Code § 2-607._

To Whom It May Concern:

This letter serves as notice and demand for corrective action on behalf of my client, Laury Smith, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5) and (9). This letter also serves as a preliminary notice and demand for corrective action by LG and Sears pursuant to Cal. Com. Code § 2-607(3)(A).

This notice concerns Kenmore Elite brand washing machine models 29002, 29272, and 29278 and LG brand washing machine models WT5001CW, WT5101HV, and WT101HW (collectively, the "Defective Washing Machines"). LG and Sears sell the Defective Washing Machines as safe, reliable and dependable for in-home use to wash and spin dry clothes, but unbalanced loads cause the drums inside the Defective Washing Machines to come loose and for the units to shake excessively when in use. This defect causes property damage and physical injury, and it results in a loss of effectiveness concerning the machines' function.

In November 2011, Ms. Smith purchased a Kenmore Elite 29272 washing machine from a Sears store in Hayward, California. Ms. Smith's washing machine was defective because it shook excessively while in use due to unbalanced loads. In March 2013, Ms. Smith's defective washing machine received an in-home repair pursuant to a product safety recall notice to address

this issue (the "Recall").  Due to the Recall repair, however, her washing machine (a) can no longer be used to clean certain machine-washable items, (b) fails to wring out her clothing, and (c) no longer functions as represented in the product advertising, marketing and owner's manual.

By misrepresenting and selling the Defective Washing Machines as safe, reliable and dependable for in-home use to wash and spin dry clothes, LG and Sears have violated numerous provisions of California law, including but not limited to Cal. Com. Code §§ 2-313 and 2-314.

We hereby demand that LG and Sears immediately make full restitution to all purchasers of the Defective Washing Machines of all purchase money obtained from the sales thereof.

It is further demanded that LG and Sears preserve all documents and other evidence which refer or relate or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the design, development and manufacture of the Defective Washing Machines;

2.      All documents concerning defects or issues with the Defective Washing Machines related to unbalanced loads and/or the spin cycle function;

3.      All documents concerning the Recall;

4.      All documents concerning the advertisement, marketing or sale of the Defective Washing Machines; and

5.      All communications with customers concerning complaints or comments concerning the Defective Washing Machines and/or the Recall.

Please comply with this demand within 30 days from receipt of this letter.

We are willing to negotiate with LG and Sears to attempt to resolve the demands asserted in this letter.  If LG and Sears contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of the receipt.

Very truly yours,

Scott A. Bursor
scott@bursor.com