1

2

3                        UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5

6

7    LAURY SMITH,

8              Plaintiff,                        No. C 13-4361 PJH

9        v.                                      **ORDER GRANTING MOTION
                                                 TO DISMISS**
10   LG ELECTRONICS U.S.A., INC., et al.,

11             Defendants.

12   _____/

13        Defendants' motion to dismiss the complaint came on for hearing on February 12,

14   2014, before this court.  Plaintiff appeared by her counsel L. Timothy Fisher, Annick

15   Persinger, and Yeremey Krivoshey; and defendants appeared by their counsel James

16   Donato and Emily Griffen.  Having read the parties' papers and carefully considered their

17   arguments and the relevant legal authority, the court hereby GRANTS the motion as

18   follows.

19                                **BACKGROUND**

20        This is a case filed as a proposed class action by plaintiff Laury Smith, against LG

21   Electronics U.S.A., Inc., and Sears Holding Corp., asserting claims related to the design,

22   manufacture, sale, and service of six models of top-loading LG brand and Kenmore brand

23   automatic clothes-washing machines (three models of LG brand, and three models of

24   Kenmore brand), which plaintiff alleges are defective.

25        Plaintiff alleges that the washing machines were labeled and advertised as "High

26   Efficiency" machines featuring "extra high" spin speeds of 1050-1100 RPM, along with a

27   system that prevents or minimizes vibrations, for smooth, quiet operation during use.

28   Plaintiff claims, however, that the washing machines have inherent design defects that

United States District Court

For the Northern District of California

cause them to shake and vibrate excessively during use due to unbalanced loads, which in turn causes internal parts to become loose.[1]  Cplt ¶ 2.

Plaintiff alleges that she purchased a Kenmore Elite Model No. 29272 in November 2011, based on defendants' representations that the product was a "High Efficiency" machine, capable of "extra high" spin speed cycles at 1050 RPMs, which would help her dry her laundry faster than washing machines that do not have high efficiency capabilities.  Cplt ¶¶ 6, 40-42.  She paid $579.99 plus tax at a Sears store for the washing machine.  Cplt ¶ 40.

Plaintiff asserts that "from the very beginning," she experienced unbalanced loads that caused the machine to shake violently, make banging noises, rock from side to side, and move or "walk" itself away from the wall against which it was positioned.  Cplt ¶¶ 6, 43-44.  Indeed, she claims that the "violent movement" of her "defective machine" was so severe that the machine "would actually shift or 'walk itself' away from the wall on which it was positioned."  Cplt ¶ 44.  She alleges that to keep the machine from damaging the dryer positioned next to it, she used a plastic trash can as a "buffer" to help absorb the "shock of the shaking machine" and "attempt to keep it in place."  Cplt ¶ 44.  Nevertheless, she did not complain to Sears about the alleged defects until more than a year had passed after her purchase of the machine.

On December 18, 2012, the United States Consumer Products Safety Commission recalled the LG/Kenmore washing machines due to the risk of personal injury and property damage as a result of these alleged design defects.  The recall announcement stated that "[a]n unbalanced load can cause the washing machine to shake excessively and the drum to come loose during use, posing a risk of injury to consumers and property damage to the surrounding area."  The six models of recalled LG/Kenmore washing machines were manufactured between February 2010 and November 2011, and were sold between April 2010 and December 2012.  Cplt ¶¶ 2-3.

---

[1]  Plaintiff alleges that the LG and Kenmore machines were "built on the same or nearly identical engineering platforms," and thus have the same inherent design defects.  Cplt ¶ 2.

**United States District Court**
For the Northern District of California

1    According to the recall announcement, as of the recall date, defendants had sold

2    approximately 457,000 of the allegedly defective machines, and had received at least 343

3    reports of washing machines vibrating excessively, of which at least 187 involved property

4    damage, and one report of minor injury.  Cplt ¶ 25.

5    As part of the recall, customers were instructed to immediately contact LG or Sears

6    for a free in-home repair, consisting of the installation of a software "upgrade" on the

7    washing machines.  Plaintiff asserts, however, that the software "upgrade" implemented by

8    defendants was not an upgrade at all, but instead "fixed" the problem by capping the spin

9    speed of the washing machines, such that the washing machines were no longer capable

10   of operating at the advertised "extra high" spin speed setting of 1050-1100 RPM.  Cplt

11   ¶¶ 4, 26-27.  Plaintiff contends that fast speed cycles are a desirable feature because they

12   remove water from clothing faster, thereby shortening washing machine time, and leave

13   consumers with drier clothes, thus shortening the time the clothes need to spend in the

14   dryer.  Thus, plaintiff alleges, the "upgrade" rendered the machines useless for the purpose

15   for which they were advertised.  Cplt ¶¶ 26-31.

16   Plaintiff asserts further that along with the software "upgrade," consumers were

17   provided with a new caution label to be affixed to the washing machines, listing a number of

18   washables that the washing machines are no longer capable of washing – items such as

19   waterproof or water-resistant clothing, mattress covers, outdoor gear, and plastic mats.

20   Cplt ¶ 32.

21   Plaintiff requested an in-home repair after hearing about the recall, and her washing

22   machine was serviced in March 2013.  However, she claims that after this repair, her

23   machine no longer functions as represented in the product advertising, marketing, and Use

24   & Care Guide; that it fails to wring out her clothing; and that it can no longer be used to

25   launder certain machine-washable items.  Cplt ¶ 45-46.

26   The washing machines are covered by a limited warranty.  The Kenmore Use &

27   Care Guide ("Kenmore Guide") and the LG Owner's Manual ("LG Manual") both provide an

28   express limited warranty that "covers only defects in materials and workmanship," for one

United States District Court

For the Northern District of California

1   year from the date of purchase.  The warranty further provides that the customer's

2   exclusive remedy is repair (in the case of the Kenmore models) and repair or replacement

3   at LG's option (in the case of the LG models).  Furthermore, the warranty included in both

4   the Kenmore Guide and the LG Manual limits the duration of the limited warranty, where

5   allowed by law, to the shortest period allowed by law.

6        The Kenmore Guide and the LG Manual also contain specific instructions regarding

7   how to operate the washing machines, including what users should avoid doing.  For

8   example, the Kenmore Guide cautions users against loading the washing machines with

9   waterproof items.

10       Plaintiff filed the present action on September 19, 2013, asserting nine causes of

11   action – (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.;

12   (2) breach of express warranty; (3) breach of the implied warranty of merchantability;

13   (4) breach of the implied warranty of fitness for a particular purpose; (5) unjust enrichment;

14   (6) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

15   ("CLRA"); (7) unlawful, unfair, and fraudulent business practices, in violation of the Unfair

16   Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; (8) false advertising, in violation

17   of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; and (9) violation of

18   the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq.

19       Defendants now seek an order dismissing all causes of action alleged in the

20   complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

21                                   **DISCUSSION**

22   A.    Legal Standard

23       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

24   sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

25   1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

26   Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

27   a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

28   minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

United States District Court

For the Northern District of California

1   that a complaint include a "short and plain statement of the claim showing that the pleader

2   is entitled to relief." Fed. R. Civ. P. 8(a)(2).

3        A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

4   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

5   a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

6   1990). The court is to "accept all factual allegations in the complaint as true and construe

7   the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group,

8   Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, legally

9   conclusory statements, not supported by actual factual allegations, need not be accepted.

10  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be

11  enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v.

12  Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

13       A motion to dismiss should be granted if the complaint does not proffer enough facts

14  to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial

15  plausibility when the plaintiff pleads factual content that allows the court to draw the

16  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

17  U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to

18  infer more than the mere possibility of misconduct, the complaint has alleged – but it has

19  not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is

20  warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved

21  by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

22       Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

23  shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), falsity must be

24  pled with specificity, including an account of the "time, place, and specific content of the

25  false representations as well as the identities of the parties to the misrepresentations."

26  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted). "[A]llegations

27  of fraud must be specific enough to give defendants notice of the particular misconduct

28  which is alleged to constitute the fraud charged so that they can defend against the charge

5

United States District Court

For the Northern District of California

1 and not just deny that they have done anything wrong." <u>Bly-Magee v. California</u>, 236 F.3d

2 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).  In addition, the plaintiff must

3 do more than simply allege the neutral facts necessary to identify the transaction; he must

4 also explain why the disputed statement was untrue or misleading at the time it was made.

5 <u>Yourish v. California Amplifier</u>, 191 F.3d 983, 992–93 (9th Cir. 1999).

6 B.     Defendants' Motion

7       In support of their motion, defendants argue that the complaint fails to state viable

8 claims for breach of express or implied warranty; that the Magnuson-Moss Warranty Act

9 claim and the Song-Beverly Warranty Act claims also fail; that the complaint fails to state a

10 viable claim under the CLRA, the UCL, or the FAL; and that plaintiff cannot state an unjust

11 enrichment claim.

12       1.     Breach of express warranty

13       Defendants assert that the complaint fails to state viable claims for breach of

14 express warranty (first, second, and ninth causes of action), because the limited warranty

15 does not cover alleged design defects and because plaintiff fails to allege facts sufficient to

16 state a claim for breach of express warranty.

17       To state a claim for breach of express warranty, a plaintiff must allege that the

18 defendant's statements constituted an affirmation of fact or promise or a description of one

19 of the goods; that the statement was part of the benefit of the bargain; and that the

20 warranty was breached.  <u>Weinstat v. Dentsply Int'l, Inc.</u>, 180 Cal. App. 4th 1213, 1227

21 (2010).

22       Plaintiff contends that her claims in this case are based on the express warranty, not

23 on the limited warranty; at the hearing on the present motion, plaintiff's counsel confirmed

24 that her claims were not based on the limited warranty in the manuals.  Instead, plaintiff

25 lists six statements she claims were "express warranties" that defendants breached.  These

26 are statements that the washing machines (a) were "High Efficiency" washers and "HE"

27 compliant; (b) were Energy Star® compliant and thus water- and energy-efficient;

28 (c) helped dry clothes faster using the "Extra High" spin cycles of 1050-1100 RPMs;

(d) were safe for residential use and fit for everyday laundering needs; (e) "will provide many years of reliable service;" and (f) are "designed and manufactured for years of dependable service." Cplt ¶¶ 63, 72.

Defendants contend that plaintiff fails to plead facts sufficient to support the requisite elements of a breach of express warranty claim as to any of the six statements.  First, defendants argue that the statements that the washers were "High Efficiency," would "provide many years of reliable service," "were designed and manufactured for years of dependable service," and were safe for residential use and fit of everyday laundering needs are non-actionable statements of opinion, not affirmations of fact or promise, or a description of one of the goods.

Under California law, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  Cal. Com. Code § 2313; Cal. Civ. Code § 1791.2(a)(2)(b).  Thus, to constitute a warranty and be actionable, the statement must be "specific and unequivocal."  Johnson v. Mitsubishi Digital Elecs. Am., Inc., 578 F.Supp. 2d 1229, 1236 (C.D. Cal. 2008).  Defendants assert that plaintiff's express warranty claims fail to the extent they are based on such generalized and vague statements of opinion and sales puffery.

Second, defendants contend that plaintiff has failed to plead facts showing that the statements at issue formed "the basis of the bargain."  For a statement to form the basis of the bargain, the plaintiff must allege facts showing that she was exposed to the alleged statement prior to making the decision to purchase the product.  Sanders v. Apple Inc., 672 F.Supp. 2d 978, 988 (N.D. Cal. 2009); Moncada v. Allstate Ins. Co., 471 F.Supp. 2d 987, 997 (N.D. Cal. 2006).  Here, defendants assert, plaintiff alleges only that the statements were printed in the user guides that accompanied the machines – not that she reviewed the guides and relied on the statements in deciding to make the purchase.  Defendants also contend that the statement "High Efficiency" cannot have formed the basis of the bargain because plaintiff does not allege with sufficient particularity that she knew what this statement meant at the time of purchase.

7

United States District Court

For the Northern District of California

1    Finally, defendants assert that plaintiff has failed to allege facts sufficient to show

2 that defendants breached any express warranty.  For example, they contend that the

3 complaint does not relate to whether the washing machines were "High Efficiency," able to

4 operate at the "Extra High" spin cycle," or whether they were Energy Star® and/or HE

5 compliant, and that plaintiff does not allege that these statements were untrue at the time of

6 purchase or during the one-year warranty period.  They argue that plaintiff appears to be

7 resting her warranty claims on alleged failures that manifested after the recall repair, and

8 that the claim fails because an express warranty does not cover repairs after the applicable

9 time period has elapsed.

10    In opposition, plaintiff argues that she has adequately pled facts supporting all

11 elements of the claim of breach of express warranty.  First, she asserts that the six

12 statements were affirmations and promises.  She concedes that product superiority claims

13 that are vague or highly subjective may amount to non-actionable puffery, but argues that

14 misdescriptions of specific or absolute characteristics of a product are actionable, and in

15 particular, that representations as to the safety of consumer products are generally found to

16 be affirmative statements of fact rather than opinions.

17    With regard to the representation that the washers would provide "many years of

18 dependable service," plaintiff contends that this is an affirmative promise that can be

19 objectively verified with the passage of time; and with regard to the representation that the

20 washers were "High Efficiency," plaintiff asserts that "High Efficiency" is simply the long

21 form of "HE," and that defendants do not challenge that the use of the "HE" logo has a

22 precise meaning within the industry and can be considered an affirmative promise that

23 constitutes an express warranty.

24    With regard to the second element – that the affirmation or promise was part of the

25 basis of the bargain – plaintiff contends that affirmations, promises, and descriptions given

26 at the time of purchase (including product manuals and other materials given to the

27 purchaser at the time of delivery) can become part of the basis of the bargain, and can be

28 fairly regarded as part of the contract.

United States District Court

For the Northern District of California

1   With regard to the third element – that the seller breached the warranty – plaintiff

2   argues that defendants breached the warranties that the machines were "HE" compliant,

3   that they were Energy Star® compliant, that they functioned with a spin cycle of 1050-1100

4   RPMs, that they were "safe for residential use," and that they would provide "years of

5   dependable service," because a design defect caused the washing machines to shake

6   violently and pose a risk of property damage and personal injury.  Moreover, she argues,

7   the breach continued following the recall, because the "upgrade" capped the spin speeds at

8   700 RPMs, which prevented the machines from drying the clothes faster, saving energy, or

9   operating as "High Efficiency" machines.

10   The court finds that the motion must be GRANTED.  Vague statements regarding

11   reliability, dependability, and safety are not actionable express warranties.  District courts

12   within the Ninth Circuit have found that words such as "reliable" and "dependable" are

13   inherently vague and general, and therefore are non-actionable, and that words regarding

14   "safety" and "fitness for use" are not the unequivocal sorts of statements that can give rise

15   to contractual obligations.  See, e.g., Viggiano v. Hansen Natural Corp., 2013 WL 2005430,

16   at *10-11 (C.D. Cal. May 13, 2013); Castaneda v. Fila USA, Inc., 2011 WL 7719013, at *4

17   (S.D. Cal. Aug. 10, 2011); Tietsworth v. Sears, 720 F.Supp. 2d 1123, 1136-37 (N.D. Cal.

18   2010); Johnson, 578 F. Supp. 2d at 1236 (C.D. Cal. 2008); Sanders, 672 F. Supp. 2d at

19   987.

20   Thus, statements that the machines were safe for residential use and fit for everyday

21   laundering needs, that they would provide many years of reliable service, and that they

22   were designed and manufactured for years of dependable service – are not statements of

23   affirmation and promise, but rather non-actionable puffery.  Such generalized

24   advertisements say nothing about the specific characteristics or components of the

25   machine, and include no guarantee, for example, that the machine will not require a repair

26   within a specified period of time.  Virtually identical statements have been found

27   non-actionable by other courts. See, e.g., Oestreicher v. Alienware Corp., 544 F.Supp. 2d

28   964, 973 (N.D. Cal. 2008) (noting that statements of product superiority based on being

**United States District Court**
For the Northern District of California

1  "faster, more powerful, and more innovative," "higher performance," and having a "longer

2  battery life" are "non-actionable puffery").

3      Moreover, of the statements that plaintiff has posited as the actionable "express

4  warranties," she has not alleged facts showing that at the time of sale, the machines were

5  not "High Efficiency," that they were not Energy Star® compliant, or that did not utilize spin

6  cycles of 1050-1100 RPMs.  Indeed, it appears from the allegations in the complaint that all

7  these features were in fact present in the machines at the time of sale.  Following the recall

8  and the "fix" provided by defendants, the spin speed was lowered.  However, this fact does

9  not render false the statements made at the time of sale regarding efficiency and spin

10  speed.

11      Finally, plaintiff fails to allege facts showing a <u>breach</u> of any express warranty.

12  Plaintiff's position as set forth in the opposition appears to be that the statements at issue

13  were independent express warranties with an unlimited duration – not that defendants

14  breached the written express limited warranty.  The general rule, however, is that a "seller

15  may limit its liability for defective goods by disclaiming or modifying a warranty," and that an

16  express warranty does not cover defects after the applicable warranty period has elapsed.

17  <u>See</u> <u>Daugherty v. American Honda Motor Co., Inc.</u>, 144 Cal. App. 4th 824, 830 (2006).  In

18  addition, "[w]ords or conduct relevant to the creation of an express warranty and words or

19  conduct tending to negate or limit warranty shall be construed wherever reasonable as

20  consistent with each other."  Cal. Com. Code § 2316(1).

21      Here, the only reasonable and consistent reading of the warranty and the alleged

22  express warranty statements is to consider the warranty – including the one-year durational

23  limitation – to apply to limit the duration of the six alleged express warranty statements at

24  issue.  The only alternative reading would be that the statements "created an express

25  warranty . . . of indefinite duration" – which would be "wholly untenable," and "leave

26  [Defendants] susceptible to a breach of warranty claim for every [machine] which, at any

27  time, required repairs . . . ."  <u>Long v. Hewlett-Packard Co.</u>, 2007 WL 2994812, at *6 n.4

28  (N.D. Cal. Jul. 27, 2007).

United States District Court
For the Northern District of California

1    To the extent that plaintiff's claims are based on what defendants refer to as the

2    "recall efficiency issue" – the alleged reduction in efficiency following the software

3    "upgrade" – plaintiff is alleging defects that first manifested after the recall repair, which

4    resulted in the washing machines operating at slower spin speeds and purportedly

5    neutralizing the benefits of the HE and Energy Star® designations.  See Cplt. ¶ 31.

6    However, there was no breach as to any of the six alleged express warranties because

7    plaintiff has not alleged that the recall efficiency issue rendered the alleged express

8    warranties untrue during the applicable one-year warranty period.

9    It is clear from the allegations in the complaint that the recall efficiency issue

10   surfaced only after the one-year warranty period expired.  Plaintiff has not alleged that the

11   washing machines did not perform as warranted by the HE logo, the Energy Star®

12   designation, and the spin speed throughout the warranty period.  See Cplt ¶¶ 3-6 (alleging

13   November 2011 purchase and December 2012 recall).  In California, an express warranty

14   does not include malfunctions that occur after the warranty has ended.  See Elias v.

15   Hewlett-Packard Co., 903 F. Supp. 2d 843, 850 (N.D. Cal. 2012).  Thus, any warranty claim

16   based on the recall efficiency issue fails.

17   Moreover, plaintiff alleges no facts to support her assertion that the alleged recall

18   efficiency issue warranties were breached at any time.  While plaintiff alleges that "High

19   Efficiency" and "HE-compliant" are "affirmative promises" regarding the washing machines'

20   water savings – that is, that they "use from 20% to 66% of the water used by traditional

21   agitator washers," see Cplt ¶ 21 n.3 – the complaint contains no allegations of the

22   machines'  actual water usage at any time before or after the recall, much less a

23   comparison to "traditional agitator washers."  See Cplt ¶¶ 27, 45.

24   Similarly, although plaintiff claims that the Energy Star® logo represents that the

25   washing machines "use 40 to 50 percent less energy and about 55 percent less water than

26   standard washers," Cplt ¶ 21 n.4, she pleads no facts regarding how much energy and

27   water the washing machines consumed either before or after the recall, let alone any facts

28   sufficient to support an inference that the washing machines no longer qualify for the

United States District Court

For the Northern District of California

1   Energy Star® designation.

2           2.      Breach of implied warranties

3           Defendants argue that plaintiff fails to allege facts sufficient to support the elements

4   of a claim for breach of implied warranties (third and fourth causes of action for breach of

5   implied warranty of merchantability and breach of implied warranty of fitness for a particular

6   purpose).

7           There exists in every contract for the sale of goods by a merchant a warranty that

8   the goods shall be merchantable.  Atkinson v. Elk Corp. of Texas, 142 Cal. App. 4th 212,

9   228 (2006).  The core test of merchantability is fitness for the ordinary purpose for which

10  such goods are used.  Cal. Com. Code § 2314(2); see also Hauter v. Zogarts, 14 Cal. 3d

11  104, 117-18 (1975) ("merchantability' requires that a product conform to its ordinary and

12  intended use).  Thus, to prevail on an implied warranty of merchantability claim, the plaintiff

13  must demonstrate that the alleged defect renders the subject goods unfit for their ordinary

14  purpose.  See Southern Cal. Stroke Rehabilitation Assocs., Inc., 782 F.Supp. 2d 1096,

15  1112 (S.D. Cal. 2011).

16          To state a claim for breach of the implied warranty of fitness for a particular purpose,

17  a plaintiff must allege facts showing that (1) at the time of purchase, the buyer intended to

18  use the product for a particular purpose; (2) the seller had reason to know this; (3) the

19  buyer relied on the seller's judgment to select suitable goods for that purpose; (4) the seller

20  had reason to know that the buyer was relying on seller in this way; and (5) the product

21  failed to suit buyer's purpose and subsequently damaged the buyer.  Keith v. Buchanan,

22  173 Cal. App. 3d 13, 25 (1985).

23          A "particular purpose"  differs from "the ordinary purpose for which the goods are

24  used" in that it "envisages a specific use by the buyer which is peculiar to the nature of his

25  business whereas the ordinary purposes for which goods are used are those envisaged in

26  the concept of merchantability and go to uses which are customarily made of the goods in

27  question."  American Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1295

28  n.2 (1995) (quoting Cal. Com. Code § 2315, UCC Code Comment 2).

**United States District Court**
For the Northern District of California

1   Under California law, implied warranties are "co-extensive in duration with an

2   express warranty" and "in no event shall . . . have a duration of . . . more than one year

3   following the sale." Cal. Civ. Code § 1791.1(c). Thus, any implied warranties for the

4   washing machines were valid for a period of no more than one year from the date of

5   purchase. See Tietsworth, 720 F.Supp. 2d at 1142; In re Sony Grand Wega KDF-E

6   A10/A20 Series Rear Projection HDTV Television Litig., 758 F.Supp. 2d 1077, 1100 (S.D.

7   Cal. 2010).

8   Defendants contend that plaintiff has failed to allege facts showing that the washing

9   machines were unfit for their ordinary purpose (washing clothes) during the applicable one-

10   year warranty period (or that even if they were, that she notified defendants within a

11   reasonable time); and has failed to allege that the washing machines were unfit for her

12   particular purpose because she has pled no facts showing that her purpose was anything

13   other than the ordinary one of washing clothes.

14   In response, plaintiff contends that the complaint adequately pleads that the washing

15   machines are not merchantable, and that a washing machine that vibrates and makes

16   excessive noise, and does not wring out clothes, is not fit for its intended purpose. She

17   also asserts that the particular purpose for which she purchased the machine was the

18   ability to operate it at 1050-1100 RPMs, and for the benefit of the specified efficiency

19   standards. She argues that her claim is not barred by the one-year limitation on claims for

20   breach of implied warranties, because the alleged defect was "latent" and "hidden from

21   consumers who could not have identified the defect."

22   The court finds that the motion must be GRANTED. As stated above, in California,

23   implied warranties are "co-extensive in duration with an express warranty," and "in no event

24   shall . . . have a duration of . . . more than one year following the sale." Cal. Civ. Code

25   § 1791.1(c). Here, plaintiff purchased the washing machine in November 2011. While she

26   alleges that she had problems with the washing machine "from the very beginning," Cplt

27   ¶ 43, she nonetheless bases her warranty claims on events that occurred more than a year

28   after the date of purchase. She requested an in-home repair well after the one-year period

13

United States District Court

For the Northern District of California

1   had elapsed, but based on the allegations in the complaint, that request was prompted only

2   by the recall announcement.

3        In addition, with regard to the claim for breach of the implied warranty of

4   merchantability, the ordinary purpose of a washing machine is to wash clothes.  Plaintiff

5   has not alleged facts showing that defendants breach of the implied warranty of

6   merchantability, which requires that a product conform to its ordinary and intended use.

7   As for the claim for breach of the implied warranty of fitness for a particular purpose,

8   plaintiff has identified no "particular purpose" for which she purchased the washing

9   machine.  She purchased it to wash her laundry, which is the "ordinary" purpose of a

10  washing machine.

11       2.      Magnuson-Moss Warranty Act claim

12       Defendants argue that the first cause of action for violation of the Magnuson-Moss

13  Warranty Act ("MMWA") fails because the MMWA, is derivative of plaintiff's state law claims

14  and does not expand the rights under those claims.  The court finds that the motion must

15  be GRANTED.

16       The MMWA provides a federal cause of action for state law express and implied

17  warranty claims.  15 U.S.C. §§ 2301, et. seq.  Under the MMWA, a consumer may bring

18  suit against a warrantor in any state for failure to comply with its obligations under a written

19  warranty or implied warranty.  15 U.S.C. § 2310(d)(1).  Dismissal of the state law express

20  and implied warranty claims requires the same disposition with respect to an associated

21  MMWA claim.  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008); In

22  re Sony Grand Wega, 758 F.Supp. 2d at 1101.  Accordingly, having dismissed the claims

23  for breach of express and implied warranties, the court also finds that the MMWA claim

24  must be dismissed.

25       3.      Song-Beverly Warranty Act claim

26       Defendants argue that the ninth cause of action for violation of the Song-Beverly

27  Warranty Act ("SBWA"), Cal. Civ. Code § 1790, et seq., similarly fails.  The SBWA provides

28  relief to consumers who demonstrate a breach of express warranty under California law by

14

United States District Court
For the Northern District of California

1    a manufacturer or retail seller.  See Robertson v. Fleetwood Travel Trailers of Cal., Inc.,

2    144 Cal. App. 4th 785, 798-99 (2006).  The SBWA also provides a cause of action for

3    breach of the implied warranties of merchantability and fitness for a particular purpose.

4    See Zambrano v. CarMax Auto Superstores, LLC, 2014 WL 228435 at *7 (S.D. Cal. Jan.

5    21, 2014).  "The substantive elements are the same under the Song-Beverly Act and the

6    Magnuson-Moss Act."  Birdsong v. Apple, Inc., 590 F.3d 955, 958 n.2 (9th Cir. 2009).

7    Here, because the court finds that the state law warranty claims and the MMWA claim fail,

8    the SBWA claim must also be dismissed.

9            4.      Claims under California consumer protection statutes

10           Defendants argue that the claims under the UCL, the FAL, and the CLRA (sixth,

11   seventh, and eighth causes of action) fail to state a claim, because they are based on the

12   same generalized statements of opinion or sales puffery as the claim for breach of express

13   warranty; because they rest on alleged fraudulent misrepresentations but are not pled with

14   particularity as required by Rule 9(b); because plaintiff does not allege that the statements

15   at issue were false when made; and because plaintiff alleges no facts showing that the

16   defendants were made aware of the alleged defects or misstatements at the time of sale.

17           The court finds that the motion must be GRANTED.  The UCL prohibits any

18   "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

19   Plaintiff asserts a claim under all three prongs of § 17200, each of which "captures a

20   separate and distinct theory of liability."  Rubio v. Capital One Bank, 613 F.3d 1195, 1203

21   (9th Cir. 2010).

22           In the "unlawful" prong, the UCL incorporates other laws and treats violations of

23   those laws as unlawful business practices independently actionable under state law.

24   Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of

25   almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v.

26   Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994).  Plaintiff alleges that defendants violated

27   the "unlawful" prong of the UCL because they violated the FAL and the CLRA.  Thus, the

28   "unlawful" claim under the UCL is entirely derivative of the other consumer protection

United States District Court

For the Northern District of California

1    claims.

2         As for the "unfair" prong, the California Supreme Court has not established a

3    definitive test to determine whether a business practice is "unfair" under the UCL.  See Bias

4    v. Wells Fargo & Co., 942 F.Supp. 2d 915, 933 (N.D. Cal. 2013) (citations omitted).  State

5    and federal courts have recognized three tests.  See Amaretto Ranch Breedables, LLC v.

6    Ozimals, Inc., 2013 WL 3460707 at *8 (N.D. Cal. July 9, 2013) (citing Davis v. Ford Motor

7    Credit Co., 179 Cal. App. 4th 581, 593-97 (2009)).

8         One test limits unfair conduct to that which "offends an established public policy" and

9    is "tethered to specific constitutional, statutory, or regulatory provisions." Davis, 179 Cal.

10   App. 4th at 595; Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007).

11   Another test evaluates whether the business practice is "immoral, unethical, oppressive,

12   unscrupulous or substantially injurious to consumers" and "requires the court to weigh the

13   utility of the defendant's conduct against the gravity of the harm to the alleged victim."

14   Davis, 179 Cal. App. 4th at 594-95.  The third test, which borrows the definition of "unfair"

15   from the Federal Trade Commission Act, requires that "the consumer injury . . . be

16   substantial;" that "the injury . . . not be outweighed by any countervailing benefits to

17   consumers or competition;" and that the injury be one "that consumers themselves could

18   not reasonably have avoided."  Id. at 597.

19        Here, plaintiff alleges that defendants violated the "unfair" prong because their

20   "misrepresentations and other conduct" are "substantially injurious to consumers,"

21   "offend[ ] public policy," and are "immoral, unethical, oppressive, and unscrupulous."  Cplt ¶

22   110.  However, she alleges no other facts in support of her "unfair" business practice claim,

23   and thus it is devoid of factual support, apart from whatever facts might be alleged in

24   connection with the other consumer protection claims.

25        Finally, UCL claims that are grounded in fraud must show that "members of the

26   public are likely to be deceived."  In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009);

27   Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003) (citations omitted).  In

28   addition, where a plaintiff alleges that the defendant failed to disclose material facts, he

United States District Court

For the Northern District of California

1   must first establish that the defendant had a duty to disclose those facts.  See Berryman v.

2   Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1557 (2007).  A duty to disclose under

3   UCL requires the same showing as a duty to disclose under CLRA.  See Falk v. General

4   Motors Corp., 496 F.Supp.2d 1088, 1095-98 (N.D. Cal. 2007) (citing Chamberlan v. Ford

5   Motor Co., 369 F.Supp.2d 1138, 1145 (N.D. Cal. 2005)).

6        Here, plaintiff alleges that defendants violated the "fraudulent" prong "by making

7   misrepresentations" about the washing machines.  Cplt ¶¶ 109-111.  Plaintiff asserts that

8   defendants' statements that the washing machines would provide many years of reliable

9   service;" were "designed and manufactured for years of dependable service;" were capable

10  of operating "extra high" spin speed cycles, at 1050-1100 RPMs; were Energy Star® and/or

11  "HE" compliant; and were safe for residential use and fit for everyday laundering needs

12  were false, and violated all three prongs of the UCL.  Cplt ¶ 107.

13       Plaintiff claims that these statements were false because the washing machines "do

14  not, in fact, provide years of dependable and reliable service because the drums inside

15  them may come loose, causing property damage and physical injury, and because they

16  require extra spin cycles to wring out wash loads;" because the machines "are not capable

17  of operating "extra high" spin speed cycles at the advertised 1050-1100 RPMs and are not

18  Energy Star® and/or "HE" compliant because inherent defects and [r]ecall "upgrades" have

19  resulted in reduced functionality so as to require numerous wash cycles and reduced

20  efficiency;" and because the machines are "not safe for residential use and everyday

21  laundering needs, as they have been subject to a recall due to an instability defect and are

22  unsuitable for washing water proof or water-resistant clothing, mattress covers, outdoor

23  gear, or plastic mats.  Cplt ¶ 108.

24       The FAL prohibits "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. &

25  Prof. Code § 17500.  To state a claim under the FAL, a plaintiff must plead facts showing

26  that he/she has standing by establishing an economic injury, which was caused by false

27  advertising that is the gravamen of the claim, plead misrepresentation with particularity by

28  identifying actionable advertising likely to deceive and showing actual reliance on such

**United States District Court**
For the Northern District of California

1   advertising, and plead facts showing entitlement to restitution or injunctive relief.  See In re

2   Sony Gaming Networks and Customer Data Sec. Breach Litig., 903 F.Supp. 2d 942, 965-

3   70 (S.D. Cal. 2012); Lavie, 105 Cal. App. 4th at 498.

4          In support of the FAL claim, plaintiff alleges that defendants "committed acts of false

5   advertising by misrepresenting the true facts concerning the functionality, safety and

6   efficiency" of the washing machines, "as described herein," Cplt ¶ 116, which the court

7   construes as a reference to the same statements listed as "misrepresentations" in the UCL

8   claim, see Cplt ¶ 107.

9          Finally, the CLRA prohibits "'unfair methods of competition and unfair or deceptive

10  acts or practices' in transactions for the sale or lease of goods to consumers."  Daugherty,

11  144 Cal. App. 4th at 833 (citing Cal. Civ. Code § 1770(a)).  Under the CLRA, sellers can be

12  liable both for making affirmative misrepresentations and for failing to disclose defects in a

13  product.  Baba v. Hewlett-Packard Co., 2010 WL 2486353, at *3 (N.D. Cal. June 16, 2010).

14  "Conduct that is 'likely to mislead a reasonable consumer' . . . violates the CLRA."  Colgan

15  v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 680 (2006) (citation and quotation

16  omitted).

17         Plaintiff alleges that defendants violated three subsections of Civil Code § 1770(a) –

18  subsections (5) and (7), which provide relief where there is a false representation that a

19  defendant's goods or services "have . . .  characteristics, ingredients, uses, benefits, or

20  quantities which they do not have," and "are of a particular standard, quality, or grade . . . if

21  they are another;" and subsection (9), which prohibits the advertising of goods or services

22  "with intent not to sell them as advertised."

23         As is evident from the above summary, plaintiff's claims under the UCL, the FAL,

24  and the CLRA all relate to the same alleged unified fraudulent course of conduct – that

25  defendants' description of the features and performance of the washing machines was

26  fraudulent, deceptive, and misleading.  Thus, because the claims all sound in fraud, they

27  are subject to the heightened pleading requirement of Rule 9(b).  See Vess v. Ciba-Geigy

28  Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003); see also Kearns v. Ford Motor Co., 567

1  F.3d 1120, 1124-25 (9th Cir. 2009) ("Averments of fraud must be accompanied by the who,
2  what, when, where, and how of the misconduct charged.").

3         The court finds, however, that plaintiff has failed to plead these claims with
4  particularity as required under Rule 9(b).  Donohue v. Apple, Inc., 871 F.Supp.2d 913, 923
5  (N.D. Cal. 2012).  Rather, the claims are based on the same vague and generalized
6  statements of opinion or sales puffery that fail to state a claim for breach of express
7  warranty.  These types of vague or highly subjective statements about product superiority
8  are not statements upon which a reasonable consumer would rely, and are therefore
9  insufficient to state a claim.  See In re Sony Grand Wega, 758 F.Supp.2d at 1089;
10  Tietsworth, 720 F.Supp.2d at 1136-37; Oestreicher, 544 F.Supp.2d at 973-74.

11         In addition, apart from conclusorily alleging that the washing machines were not as
12  they were represented to be, plaintiff offers no particularized allegation as to why each of
13  the six representations was false or misleading.  Plaintiff asserts that she would not have
14  bought the washing machine had she known the "true facts" concerning its functionality,
15  safety, and dependability; that she paid a "price premium" based on defendants'
16  representations regarding the machines, and that the machines did not have the
17  "characteristics, uses, or benefits as promised."

18         However, plaintiff does not allege that either at the time of sale or during the one-
19  year express warranty period, the washing machines were not "High Efficiency," were not
20  capable of operating spin cycles at 1050-1100 RPMs, were not Energy Star® machines, or
21  were not "HE" compliant.  The complaint plaintiff has about the machines appears to be
22  that unbalanced loads of laundry could cause the machines to vibrate excessively and
23  make a loud banging noise during use.  However, she cannot base her claims on
24  statements that were not untrue or misleading at the time they were made.

25         Moreover, plaintiff has alleged no facts – as opposed to mere conclusory assertions
26  – that defendants were aware of or had any reason to know of the excessive noise and/or
27  vibration at the time of sale, which is a requirement under the UCL, FAL, and CLRA.  See
28  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012) (UCL); In re Sony

United States District Court
For the Northern District of California

19

1   Grand Wega, 758 F.Supp. 2d at 1093 (FAL); Baba v. Hewlett-Packard Co., 2011 WL

2   317650 at *3 (N.D. Cal. Jan. 28, 2011 (CLRA).

3          As for  the claims regarding the reduced efficiency and spin speeds, plaintiff

4   concedes that those problems resulted from the December 2012 recall.  Again, she does

5   not plead any facts showing that defendants were aware of the alleged defects or

6   misstatements at the time of sale.  She asserts that defendants "knew about the defects

7   . . . since 2010 from a litany of consumer complaints," Cplt ¶ 31, but this allegation is

8   unsupported by any facts or particularized allegations other than citations to consumer

9   comments from February and March 2013.  Thus it is insufficient to support an inference

10  that defendants were aware of the defects at the time of the sale.  Absent any allegations

11  that defendants had prior knowledge of a defect that needed to be remedied, there is no

12  basis for a claim that defendants' conduct is unfair (unscrupulous or substantially injurious

13  to consumers) or unlawful.

14         5.     Unjust enrichment claim

15         Defendants argue that plaintiff cannot state a claim of unjust enrichment because in

16  California, unjust enrichment is not a stand-alone cause of action.  In response, plaintiff

17  asserts that she can state a claim for unjust enrichment, because under California law,

18  unjust enrichment may be a "fall-back" theory asserted as part of a claim of restitution

19  based on quasi-contract.

20         The court finds that the motion must be GRANTED.  Unjust enrichment is not an

21  independent cause of action under California law.  See Avoy v. Turtle Mountain, LLC, 2014

22  WL 587173 at *8 (N.D. Cal. Feb. 14, 2014); Swanson v. ALZA Corp., 2013 WL 968275 at

23  *12 (N.D. Cal. Mar. 12, 2013).  The weight of authority holds that "[u]njust enrichment is not

24  a cause of action, just a restitution claim." Hill v. Roll Int'l. Corp., 195 Cal. App. 4th 1295,

25  1307 (2011); see also Levine v. Blue Shield of Cal., 189 Cal. App. 4th 1117, 1138 (2010);

26  Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003).  In addition, however,

27  restitution is already a remedy for a properly pleaded UCL claim.  See Pfizer Inc. v.

28  Superior Ct., 182 Cal. App. 4th 622, 631 (2010).

United States District Court
For the Northern District of California

**CONCLUSION**

In accordance with the foregoing, defendants' motion to dismiss is GRANTED.  As the court finds that any attempt to amend the breach of warranty claims would be futile, the dismissal of the first through fifth and ninth causes of action is with prejudice.  The dismissal of the sixth through eighth causes of action is with leave to amend.  Any amended complaint shall be filed no later than April 11, 2014.  No new claims or new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  March 11, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge